and how much time you'd like. Darryl Loman of the Office of the State Appellate Defender. For the appellant, Mr. Dixon, about 15 minutes and then I can just hold for you for rebuttal. This is Assistant State's Attorney Tasha Marie Kelly on behalf of the people and about 15 minutes. All right, Mr. Loman, whenever you're ready, please keep in mind we have read the brief and we're familiar with your argument. Yes, Your Honor. Good morning and may it please the Court. Again, I'm Darryl Loman with the appellant, Cheryl Dixon. I raised two arguments in my brief today, but today I would like to focus on the first argument, which is that the Court erred when it allowed Dixon to proceed pro se without providing access to his redacted trial file. Though PC counsel filed nothing on the case for four years, she repeatedly represented the Court that it was necessary to review the public defender's trial file before filing an amended petition. And this appears on the record numerous times, including J3, M2, N2, O2, P2, and Q2 of the reported proceedings. This makes sense because Dixon's trial file contained, for example, evidence of his medical records, which is part of his coercion claim. He had all his medical records. He represented that he had them all. I'm not sure that he had all of his medical records. He had them at one point and he gave them to his trial attorney and they were inserted in the trial file. He was able to get some of his medical records, but not all of them, before he filed his amended petition. So his medical records relate to what issue? Coercion. Okay. During the motion to suppress, his ineffective assistance claim is, my lawyer didn't call me at the suppression hearing to testify to coercion. More specifically, kind of surprisingly, his lawyer didn't call any witnesses. He filed a motion to suppress, alleging coercion, and rested without presenting any witnesses or any arguments. Okay. So this was the middle motion to suppress. And the first motion to suppress, State presented its witnesses. That was the Miranda motion. And Mr. Moffitt, who was representing the defendant, said, Judge, I'm not prepared to rest at this point. And then over the lunch hour, evidently, he talked to Mr. Dixon, and he came back after the lunch hour and said, Defendant, rest. So he decided not to call Mr. Dixon. And there's a third motion to suppress, on the ground that Mr. Moffitt wasn't present during the lineup. And Mr. Dixon was called at that hearing, right? Sure. Okay. So in between, Mr. Moffitt just what? Forgot? No. To call Mr. Dixon? Well, the greater issue in any case like this is we don't know why because he was never asked. Well, he had an opportunity to ask him, post-trial, when he was called as a witness. And Mr. Dixon was afforded the opportunity to cross-examine his trial counsel. Very unusual opportunity. And he never asked him. That's true. It was unusual because he had requested what was, in essence, he didn't know was pro se, but is, in essence, a cranky hearing. And the court did not appoint alternative counsel. And reaffirmed that on direct appeal. So he proceeded pro se for the motion for due trial. And that was affirmed on direct appeal. That's correct. Right. And the trial court didn't curtail his examination, didn't prevent him from asking his counsel, why didn't you call me at the coercion suppression hearing? Well, this court's direct appeal, order on direct appeal, reflects that in the middle of his cross-examination of his attorney, he turned to the judge and asked, can I have a continuance? And I would also like to call my family members to testify in this hearing. And the continuance was denied. So just to clarify the facts of what happened. Right. And on direct appeal, we said there was nothing wrong with that because Mr. Dixon was given ample opportunity to prepare for that hearing. If he wanted to have witnesses present, he had the opportunity to do that. And he didn't do it. And we said that was fine. Yes. And we also said we find the trial court's determination that trial counsel provided effective assistance to defendant during the pendency of his case was not manifestly erroneous and that there was not any evidence in the record of possible neglect. How is that not race judicata? Well, specifically with respect to what Your Honor just said at the very end there, there's no evidence in the record. The purpose of the Post-Conviction Hearing Act, and I've cited numerous cases for this in my brief, is to bring in things from outside of the record, and particularly in this context where you have a petitioner proceeding pro se, to attach different information that wasn't available at the trial court stage. So it is a proper use of the Post-Conviction Hearing Act to file this sort of petition, and it was advanced to the second stage. This wasn't just a matter of the time running out. The circuit judge within the 90-day period decided to appoint counsel to look into this matter and see if there's anything else that could be added. It passed the 90-day review stage by default. Counsel was appointed. Right. But it passed by default. Petition was filed in September 2005. Counsel was appointed in December 2005. This wasn't a matter where we just waited until the end. The review period existed. The direct appeal was still pending at the time the 2000 petition was. Yes. The 2005 petition was filed. Yes. Right. That's true. And counsel was appointed to represent him. And, again, aware of all the facts that Your Honor said, said, I need to review the record, of course, but I also need to review the trial file, which is two large boxes, to determine whether the other public defender was ineffective at trial. It just stands to reason that if that public defender on PC needed to review the documents, then once Mr. Dixon was allowed to represent himself pro se, he would also need to review the documents. You started with the medical records. What other documents was he asking for? Well, so in a larger sense, the review as a whole was necessary because one of the arguments that, again, Mr. Moffitt, the public defender at trial, made during opening statement was that witnesses only came forward because there was some sort of reward offered. And then during the course of the trial presented no evidence of any reward. And then during closing argument, the State very competently said, hey, did you hear any evidence of award? There was no evidence of award and just beat him up at the closing argument. There was still, we don't know, whether there's anything in the trial file that indicates that there was a reward, that Mr. Moffitt did not put those witnesses on at trial, or alternatively, if there's nothing in the trial file, any evidence whatsoever, witness statements indicating that there was a reward, then it was incompetent to say that there was one. Tell the jury at a jury trial, there's a reward, and then not present any evidence of that. And the only way to determine that is if the review of the trial file, at which point you could say, if there's nothing in there, I reviewed the trial file. Here's an affidavit. There's nothing in there. Or alternatively, here's the witness statement that the public defender investigated around, and here's what it said. The documents that were created in preparation for the trial by other agencies, say the police, doctors, whatever, those would not be redacted as work product of the trial attorney. So if the argument is, oh, this file is, we have to redact work product of the attorney, what exactly would you, how exactly would you define that, that little part of this two boxes of trial files? Thank you for asking that, because there's an important distinction to be made. Redaction would be where a defendant represents himself, the attorney who has the files required to redact witnesses' addresses and telephone numbers so that that information is not available to the defendant himself in that case. The work product issue, I think, is kind of a red herring. The state doesn't even raise it in their brief. I think it was misapplied by the trial court in this case. Nothing is being redacted for work product. It's a matter of the public defender not wanting to, again, it's fairly voluminous, go through everything, see if there's a witness name and address, and redact that out. That's what redaction refers to. Just for the record, why would the defendant himself, who's now representing himself, not have access to the witness' names? The names would exist. It would be a contact information, the address and the phone number. Well, what if he needed to contact them? How would he do it? I believe it's by a Supreme Court rule that it's required to do that. Okay. Memos that the- Argument for another day. Notes that the defense attorney wrote to him or herself, check this, check that, check that. Should all be in the trial file, unredacted. Except to the extent I called so-and-so, here's their phone number, just cross off the phone number. And would they also be separate from attorney work product? Well, I mean, that is, in the broader sense of what work product means, that would be work product. But, again, I don't think that has any application in this case. But here we're talking about this defendant seeking stuff from his own attorney. Correct. Not from the other side's attorney. That's right. So the work product doctrine, again, goes to discovery generally, which I believe, again, is a red herring in this case, is what I heard in the brief. And, again, the state doesn't really push back on that very much in their brief. But to say, work product, you're not required to turn over to the other side. But as Your Honor pointed out, this is his attorney. So the trial file is really his file. So- And the attorney is the person who represents him. Your position is, if a defendant pursuing a post-conviction petition doesn't want the reasonable assistance of the public defender's office, says, I want to go on my own, give me my entire trial file. He's entitled to do that. Subject to redaction, though, as I just discussed. And is there any case that holds that? No. But there are cases that hold that a pro se litigant in general does not need to be treated better than an attorney. Obviously, although judges subject to the discretion, certainly at the trial court level, try to help out a little bit. But they don't need to be treated worse. And I don't think there's any question here. Well, we do know that the public defender at trial gladly turned it over to the public defender at PC. And we've had cases in my office where if for whatever reason we're able to use the trial file, we're able to easily get it from the public defender's office. It's possible that you could infer that one of the reasons he wanted to get rid of the public defender is that this case lingered for 11 years. Yeah, I would say there's- He was just sick and tired of it. I would say there's two reasons. One, after she was appointed, and we discussed the dates earlier, nothing was filed for four years. And, again, this isn't like the trial court where he's being written into court every day. For PC proceedings, when somebody is an appointed attorney on PC, they're sitting at Stateville or some other facility and the attorney's coming to court. So the only way they know what's going on in court is the attorney tells them this, the attorney tells them that. Well, four years, I didn't do anything. I'm not filing anything yet. I didn't do anything. I'm not filing anything yet. And this is reflected on the record because you're telling the judge the same thing. I need to continue this. I didn't look at the transcripts. There's a lot of transcripts. What's the policy on handling appeals in your office? By judgment date, typically. First in, first out, right? Yes. What's the public defender's policy? It's different. I can't speak. I don't want to speak to their policy, but I understand it's very different. Actually, the public defender did tell the court it's first in, first out. Okay. Same policy. I'm just finding the right context to answer the question. The rest of it is, that's not the only reason. So, again, once we reach. And so when we talk to the Office of the State Appellate Defender about delays, the response is always first in, first out is our policy. We cannot leapfrog cases over another. It is, Your Honor. So when the public defender says that, they're being ineffective and the defendant should get rid of them. One, I'm not here to represent the Office of the State Appellate Defender. I represent Charles Dixon. But, two, I'm also not here to criticize that policy. The rest of the answer is, I'm sure he was annoyed. It was a four-year delay. That's what he was being told. But she had reached the point prior to him asking her off the case where she did read everything. She did look at the trial file. She did look at the record. And she told him she was going to file an amended petition. And, again, reflected in the record. The key date here is April 3, 2010. That's the most important transcript. Because that's the date he came into court and explained. She read it. She talked to me. She's filing an amended petition. And she's planning on dropping several of the issues in my pro se PC. That is a very common experience that, yes, my office also experiences. Yes. But his position was he didn't want to do that. He could not have been any more clear, saying, on the record, I really don't want to waive any of my issues. I may not do a good job of this. I'm probably going to do a lousy job of it. But at least one thing is for certain. I won't be waiving my issues. So, yes. And he did that on direct appeal with your office. He wanted to get rid of your office because you wouldn't pursue all of his issues. He did it on this appeal. He wanted to get rid of your office. He wanted to file a pro se brief because you wouldn't present all of his issues. Yes. So we understand it's a very common, sometimes valid concern. And the point is he did pursue pro se, and he did raise issues that she didn't want. The fact that there aren't any cases on point with regard to this exact issue, why do you think that is? I think it's because this is hopefully extremely unusual where we have the situation. Again, the point, the specific issue that I'm raising here is he was allowed to go pro se and then denied the records. I don't know that that's ever happened. It's hopefully extremely unusual, so there's not an occurrence where there would be precedent. Particularly in a case like where you just said that the post-conviction counsel stated on the record that there were points to be raised in an amended petition. Right. And he's not having access to the same records that she had access to and had reviewed. Yes. And that's the issue. That's a huge part of the issue. That's what we've talked about so far. But I don't want the court to lose sight of the fact that the greater issue is, again, at this April 30, 2010 hearing, when he was allowed to represent himself, he did so with the idea that you would have access to these redacted documents. He was told by the court, I will have the defense, meaning the public defender, redact the reports that they have, I'll give you copies of that. As long as I get the documents, how long do you need to file? Well, I've got to get the documents. Once I get the documents, four or five months. Let me ask you this. Is your argument about waiver of the post-conviction counsel and the error in the denial of access to the trial file distinct arguments or does one depend on the other? It's completely dependent because I'm not arguing. Again, I think it's a red herring to think of this. It's just like discovery. Was he allowed to access it? Yes, I think he should have been. The important thing is on that day, the date I keep coming back to, he waived counsel with the idea that he would be able to have access to that file, would be able to review the whole thing, attach any documents. Like I said before, maybe even an affidavit saying there's nothing in here about the reward and the legal issue in the cases that I say, the Supreme Court cases, Lego and Baez, this court's decision in Gray. Talk about how the ultimate question is whether he waived counsel with full awareness of both the nature of the right being abandoned and the consequences of the waiver. By waiving counsel who had access to the trial file, he was essentially losing access to the trial file. Where in the record would you say that the judge made it clear to him that I'm going to give you, if you waive, you're waiving. And if I grant that, I'm also granting you access to the documents. Is there any concrete statement by the judge on that? There's not, but I would argue that that puts it on his head. She needs to be informed that the consequences are blank, and if she's planning on not giving him the trial file, he needs to know that at the time that he waives counsel. And clearly, again, just look at the transcript on that date. There's things in there towards the end where she kind of hedges and says, well, maybe I won't give you that. I don't know. There was no in-camera review done here. It wasn't a matter of the judge took the two boxes, went through them, and said, this is irrelevant. That was never done. Did he ever ask for the public defender to be appointed again? No. Because now I know I can't get the trial file. I just have to have that trial file. He did not. Never did. And I believe he assumed he would get the same public defender who would waive those issues that he definitely wanted to present and did present. But I would argue in my second argument are actually pretty decent issues, better than some of the issues I think maybe she would have raised. So, again, in the larger context, we'll often see all these facts come back to the issue. On that date, was he aware of the consequences of his decision to waive counsel? So in looking at this issue, should the court then be understanding how the defendant heard the judge, rather than maybe looking very clearly and concisely at the words stated by the court? I would say yes. But then also the words stated by the court by and large do give that impression, I think. He did believe that. And I think that was a reasonable impression from statements such as, I will have the defense redact the reports. Everything is discussed under the assumption that he will get it. He keeps saying repeatedly, even at later court dates, I need everything. I need everything. I want everything. He made that really clear to the court. So I think even if you kind of parse language and say, well, maybe the judge hedged 20 pages into the transcript, yeah, she probably did. It's fair, right? You don't know. Something could come up later. But the question is, what did he know? When he waived counsel, he believed he would. I think it's clear from that transcript. He believed he was getting a trial file. And when he didn't get it, the rug was pulled out from under him and under Lego and some of the other cases that I cite in my brief that makes the waiver invalid. And he's not asking for anything other than what his counsel had, correct? Yes. Nothing more. And many things in the trial file. He wanted all sorts of stuff from the state. I want to be able to get discovery from the state, and I want any deals they had with witnesses and the police records and everything. He wanted all that stuff. He wanted just his trial file. I will gladly waive that and say on remand that this court should make clear in its order that he should have access to the entire trial file and everything in it. Not necessarily. A lot of that discussion was things that don't even exist, right? There's not a paper to produce. Does the affidavit that post-conviction counsel has to file under the Supreme Court rules have to say, I have reviewed the entire trial file? No, but she represented the court on multiple occasions that she did. What is the scope of reasonable assistance? Well, in the course of that affidavit, you have to review anything necessary, and she told the court that that was necessary, and I believe her. That's right. It was necessary. And if it was necessary for her to look at it, it's necessary for him to look at it. And she came up with those two issues that he wasn't satisfied with. That's right. So for all these reasons, it doesn't matter whether the court had a good enough reason to refuse him access to it. The important thing is that he waived it based on the presumption that he would receive it. And because of that, the waiver was invalid. The State says that you're arguing that he was tricked into waiving his. No. You're not saying that, are you? No, I'm not. I mean, the judge, that's unfair to the judge to say that she knew she was going to deny him the trial file. There's no way that's true. That's definitely not what I'm arguing. Well, what do you mean then when you say she pulled the rug out from under him? It sounds like he was tricked. It's from his perspective. He thought he had it, and then it was taken away from his perspective. And, again, that's what we're talking about in answer to Justice Hyman's question. In his mind, what did he think the consequences were? It's the trial judge's or the judge's duty in this case to make it clear to him what the consequences are at the time he waives counsel. The case law on this indulges the presumption against the waiver of counsel. It comes up time and time in the case law, including in BIDACs. So it has to be very clear to him what he's going to have, what the consequences are going to be. And if it ends up not being the case, the waiver isn't valid. And for that reason, this Court should reverse. All right. Thank you. Thank you. Ms. Kelly? I can't please the Court, Counsel. The people asked this Court to find that there was no abuse of discretion by the trial court where it allowed the petitioner in this case to proceed pro se, as this was a knowing and intelligent waiver of his counsel. The question of whether a waiver is knowing and intelligent has to do with whether the petitioner definitely invoked his right to self-representation and expressed a desire to represent himself. How can we fairly deny Dixon access to his trial court file when we know that post-conviction counsel's review of the file was fruitful? Well, the question that's raised here and the claim that is made is not that his waiver wasn't voluntary because he was denied access to his file. His argument is that his waiver was involuntary because he waived under the impression that he would – that there was an express promise from the Court that he would receive discovery, which is a different question. I don't know. What he was saying is very simple. I want to see what my post-conviction counsel saw. That was it. It wasn't anything more. And he asked for that. And he said, I'm going to represent myself. It may not be the best thing to do, but things are going slowly. I want to do it. So all he was asking for is I'm going to represent myself, but I have to have access to the same thing that she's looking at. That's all he's asking for. Why isn't that fair? Well, I agree that that's what he said. Well, isn't that what he understood? No. Well, what the Court said to him in response was there's a lengthy discussion, and part of what the Court said is what you heard from counsel. But as the discussion continued, the Court clearly said to him, when he asked again, but I get access to everything they got access to or had access to, right? And the Court replies to him, I don't know exactly what all these documents are, so we would have to have a discussion about some of that. I don't know. And then she tells him, we are going to take a date. I'm going to give you the redacted common law record. Did he ever get you the redacted common law record? He did, Your Honor. And we're going to bring the assistant state's attorney in to see if they have objections. This is the same discussion in which he has just announced to the Court that he wants to go pro se, where the Court has accepted his waiver, and she proceeds to tell him this is how he's going to do it. Wait. This is after he's already stated that he's waiving. Am I correct? That statement, you just read it. After the fact. So we can't look after the fact as to what. No, Your Honor. The statement that I just read to you comes before the Court accepts his waiver. That discussion takes place at Z11 to Z12 of the record. The Court accepts his pro se waiver on Z20. So realistically, if this defendant was premising his going pro se on the fact that he was going to receive discovery, when the Court said to him, well, I don't know if you're going to get discovery, he would have said, but I'm going pro se on the understanding that I'm getting discovery. I'm not clear what you mean by discovery. He's not asking for discovery. He's asking for his attorney's record. That's not discovery as we normally know it. He's asking for his attorney's file. So the language is confusing, and he's not an attorney. And, you know, somebody mentioned discovery. He's asking for other things, as counsel just said. That's discovery. When you're asking something from the State, that's discovery. Asking for your own attorney's records is not discovery. He wasn't answering discovery. He's asking for something different. And it seems to me that the State is combining those two concepts of discovery from the State with asking for his own records that his own counsel had, and has said that there may be two good claims to be raised in the amended complaint. And now he's being denied the opportunity to do so on his own. I don't see how you can reconcile that. Well, regardless of what he's asking for, it's made clear to him by the Court that there is a chance that he will not receive those documents. Maybe discovery. But she said that she was going to redact. Some documents would be redacted, and he would get those. Did he ever get those? Some of them, yes. Some of them, but he didn't. And she said she was going to have them redacted, and he was supposed to get them. But, Your Honor. Is that right? Am I correct? I don't believe that it's correct. I believe that if you look at one statement out of context, she does say, I will have the defense redact the reports they have, and I will get you copies of that. Did he get those? Some of them, yes. Okay, so he didn't get all of them. Not all of them. Okay. But that's not the end of the discussion. He then repeats the question, but other than that, meaning the redaction, I get access to everything they had access to or had access to. And the Court says, I don't know. We'll have to have a discussion about that. I don't know. And then she said, then he said in response to the Court's comments, as long as I can get the documents and the stuff from the State, you know, I need that they get any witnesses receive any special treatment for their testimony, any time cuts. So he's talking about what he wants to get from the State, right? That's correct. So there is a mix of things that he wants to get that his attorney had, things that he wants to get from the State. Well, the counsel just conceded what from the State. It's not what you were after here. The only thing we're after is what his counsel had. That's the issue. But the – I'm sorry. Okay. If his attorney and that is if his defense attorney had in the defense trial file material obtained from the State, it's still in his attorney's trial file. So I'm still having a hard time calling that discovery. He's not asking for new stuff from the State. He's asking for stuff that his trial attorney had in her two boxes, his two boxes, and got in preparation for the defense. This is his attorney. This is his attorney's trial file. So the attorney got from the State the police reports. You can't say that the defendant can't get the police reports on his own arrest just because they originated from the police in the State. They're still in his attorney's trial file. That's correct. So I still think that there's a huge distinction between trying to discover new stuff that his attorney never knew about and anything that his own defense attorney had in her or his trial boxes in preparation for trial. Those same things that it took four years for this attorney to read. I still think there's a big distinction. And to keep calling that mass of things discovery is a mistake. We need to differentiate between his trial attorney's material, however that trial defense attorney got it, it was still part of the defense plan, strategy, review, whatever, and discovery, which would be something entirely different. And I can do that. So to be clear, it's the State's position that during the course of this discussion, he asked for things from the trial, actually the entire trial file, which would be everything that his attorney had. And you agree that he should have gotten it? Based on the rules of professional conduct, we would agree that he probably should have had it. Okay. And what if that included things that that defense attorney already had collected from the State, including, I don't know, reports, statements, affidavits, however this stuff is put into a trial file, that they made a deal with the witness? Our position would be any document that's contained in the trial file, regardless of how they received it, subject to the redaction. Why? A police report? No. Why would the arrest report be subject to redaction? It's generated by the State. If there's any information, like contact information about the witnesses or something like that. Why would any statements that he made be, that's generated by the State, why couldn't he have that? He could have that. Why would any witness statements or line-up verifications or any of that stuff, it's all created by the State, by the police, he can have that, right? If it's in the trial file, yes. Anything that's in the trial file? Yes. Okay. Subject to the redaction of personal information of witnesses. And we should assume that during the entirety of Mr. Dixon's prosecution and the underlying case, his lawyer never gave him any of that stuff. No, I don't think that we can assume that. And, in fact, I think that based on the record of not only the underlying proceedings but the post-conviction proceedings, we can be certain that Petitioner saw a number of these documents, that he was familiar with a lot of these documents. If you look at the hearings that took place during the post-conviction proceedings, the court had Petitioner file a motion for discovery that was a full hearing in which Petitioner went through all of the documents that he wanted, explained why he wanted those documents and what he was going to use them for, and the court went through each and every one of those documents and ruled whether he had shown good cause. And what's interesting during the hearing is you can tell the familiarity that Petitioner has with a lot of these documents. He's explaining exactly what it is when he's referring to one report and he says, you know, it's three pages and it's written by this detective and this is what it says. So it's clear that he has seen a number of these documents. The fact that he's seen them doesn't mean he has. If not received them. He may have, but we don't know if he had them at the time. My question is, is there anything in the record that shows that he had copies of documents from the trial file? Well, we know that the trial court, the post-conviction court, gave him three handwritten statements, three grand jury transcripts, a final report that has to do with the shirt that was recovered, that Darlene Mitchell had washed or not washed. We know that he had medical records because he used those to write his underlying. But not the whole. He didn't have the whole file. He didn't have the entire trial file. But, again, the issue that's before this court is the question of whether his waiver was voluntary and what he states is that it was involuntary because he was expressly promised this discovery or the documents and the discovery. Okay. So, and as I understand it, what you're saying is we object to the discovery from the state, but as far as the trial file, whatever's in those boxes that the attorney had, those can go to him. Is that your position? That is our position. But as far as the issue that's before this court is that his waiver was voluntary because there's, first of all, there's nothing in the record that shows that he went forward pro se solely because he was under the belief that he was going to receive these documents. And if you look at the post-conviction proceedings, there's no point, not one single mention from this petitioner in the record where he says, I went forward thinking, having been promised, that I would receive this discovery. And at the end of the hearing where Judge Brosnahan went through every category of documents that he saw, and at the end of that hearing she said, I'm going to have the state give you X, Y, and Z. And he said, I don't want them. I already have them. That's right. Right? Yeah. And this, you've read the record. You're familiar with the record. This was not a shy defendant. There were numerous times that he spoke up and said, you promised me this, and I haven't gotten that. For example, he told the court, you promised me an in-camera inspection of documents. I haven't gotten that. This is a defendant who filed a motion for substitution of judge and raised 47 different allegations of how he was being mistreated by the judge. And not one of those 47 allegations is, she promised me the trial file. She promised me discovery. I haven't received it. So where is the demonstration in the record that this defendant went forward, pro se, on the basis with the understanding that he would be receiving discovery? It's not there. And that is the issue that was presented to this court. And everything that is in the record, as far as the issue of a voluntary waiver, shows that this petitioner entered into going pro se in this case with a full understanding of the consequences. He was told by the court before going pro se, you won't have access to some of the best attorneys that there are out there. You won't have – Why did he want to go pro se? He indicated that his attorney did not want to go forward on all his issues, that he was tired of waiting. And so for that reason, he was going to go forward and represent himself. And in order to do that, he needed the complete file that she had. And that may be so, but the question is – That was his claim. That's correct. And he was never promised either the trial file or the discovery by the court. And the court in this case undertook with great concentration, examining why he wanted the discovery, why he wanted the documents that were in the trial file, found that he had shown good faith for some of the documents, and turned those over. This was a fair court that did everything it could to prevent this defendant from going pro se, and he chose to do so. And there's nothing in the record that supports the claim that's presented to this court, which is that he went pro se solely with the understanding that he would receive the trial file and or discovery. And so for those reasons, we would ask this court to find that there was no abuse of discretion, and we would stand on our brief as to the second issue. Thank you. Thank you. All right, Mr. Allman. Very briefly, I just have one point on rebuttal. Counsel conceded that the trial court erred in not giving the trial file to the defendant. I would argue that that's reason alone for this court to remand for second state proceedings where it has access for the trial file for the reasons that I already illustrated in my briefs and in my opening presentation here today. And if Your Honors have no questions of me, thank you. Thank you. All right, thank you for your arguments here regarding the briefs. We will take the case under advisement.